Whitney A. Leonard
whitney@sonosky.net
Richard D. Monkman
rdm@sonosky.net
Chloe E. Cotton
chloe@sonosky.net
Sonosky, Chambers, Sachse,
  Miller & Monkman, LLP
510 L Street, Suite 310
Anchorage, Alaska 99501
Telephone: (907) 258-6377
Facsimile: (907) 272-8332

*Counsel for Native Village of Eklutna*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| Brian Holl, Julie Jorlett, John Sarvela, Marilyn Sarvela, Sean Barnett, Lori Barnett, Dustin Loughman, and Tiffani Loughman, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:24-cv-00273-JLR |
| Sharon Avery *in her official capacity as Acting Chairwoman of the National Indian Gaming Commission*, and Native Village of Eklutna, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**
**Fed. R. Civ. P. 12(b)(1), 12(b)(7), and 19**

Motion to Dismiss Plaintiffs' First Amended Complaint                    Page 1 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

Case 3:24-cv-00273-JLR    Document 13    Filed 02/18/25    Page 1 of 26

Defendant Native Village of Eklutna appears in this matter for the limited purpose of moving to dismiss this action for lack of subject matter jurisdiction due to the Tribe's sovereign immunity, pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to join an indispensable party pursuant to Rules 12(b)(7) and 19.[1]

## I.     INTRODUCTION

The Native Village of Eklutna ("the Tribe") is a federally recognized Indian tribe[2] of the Dena'ina people who have resided in the Upper Cook Inlet region of Alaska since time immemorial.[3]  The Tribe recently opened and is currently operating a small gaming facility on a Native allotment owned by tribal members within the Tribe's traditional territory ("Eklutna allotment").[4]

---

[1] As with the Shoalwater Bay Indian Tribe in *Maverick Gaming LLC v. United States*, 123 F.4th 960 (9th Cir. 2024), by appearing in this action "for the limited purpose of moving to dismiss under Rules 12(b)(7) and 19, [the Native Village of Eklutna] does not waive, and reserves in full, its sovereign immunity.  Nothing herein shall be construed as waiver, in whole or in part, of the Tribe's immunity, or as the Tribe's consent to be sued, and the legal counsel for the Tribe, undersigned, lack authority to waive the Tribe's immunity or consent to the jurisdiction of this Court," *id.* at 978.

[2] 89 Fed. Reg. 99899, 99902 (Dec. 11, 2024) (Eklutna Native Village included in Secretary's list of "Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs"); *see also* Ex. A, NIGC Letter to President Aaron Leggett 4 (July 18, 2024) [hereinafter "NIGC Letter"] ("The Native Village of Eklutna is an 'Indian tribe' within the meaning of the IGRA [Indian Gaming Regulatory Act].")"; *Native Vill. of Eklutna v. United States*, No. 19-cv-2388, 2021 WL 4306110, at *1 (D.D.C. Sept. 22, 2021) ("Eklutna is a federally recognized Indian tribe of the Dena'ina people whose traditional homeland is the upper Cook Inlet region of Alaska.").

[3] *See* Ex. A, NIGC Letter, at 2.

[4] *See* Zachariah Hughes, *Native Village of Eklutna opens limited gambling operation at site of future casino in Birchwood*, Anchorage Daily News, Jan. 21, 2025,

Motion to Dismiss Plaintiffs' First Amended Complaint                    Page 2 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

In this Administrative Procedure Act matter, several landowners near the Eklutna allotment seek to reverse the July 18, 2024 decision by the National Indian Gaming Commission ("NIGC") approving the Tribe's Gaming Ordinance pursuant to the Indian Gaming Regulatory Act ("IGRA").[5] Plaintiffs sue both the United States and the Tribe, asserting that increased traffic to and from the Tribe's current gaming facility and a planned expansion will injure their interests.[6] The Tribe is a required party in this case, but has not waived its sovereign immunity from unconsented suit and cannot be feasibly kept in this action.[7] "In equity and good conscience," this action must therefore be dismissed.[8]

## II. STATUTORY BACKGROUND

The Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721, provides a statutory basis for regulating gaming activity on Indian lands.[9] Congress enacted IGRA following

---

https://www.adn.com/alaska-news/anchorage/2025/01/21/native-village-of-eklutna-opens-limited-gambling-operation-at-site-of-future-casino-in-birchwood/ (last visited Feb. 14, 2025).

[5] First Amended Complaint ("Compl.") ¶ 1, ECF No. 7.

[6] *Id.* ¶ 12 (alleging impact).

[7] *See Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 803-04 (2014) (citing, *inter alia*, *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)).

[8] Fed. R. Civ. P. 12(b)(1), 12(b)(7) & 19(b); *see also Maverick*, 123 F.4th at 966; *Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, 48 F.4th 934, 938 (9th Cir. 2022); *Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 850 (9th Cir. 2019); *Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1098 (9th Cir. 1994).

[9] *See Bay Mills Indian Cmty.*, 572 U.S. at 785.

Motion to Dismiss Plaintiffs' First Amended Complaint                Page 3 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

Case 3:24-cv-00273-JLR    Document 13    Filed 02/18/25    Page 3 of 26

the Supreme Court's ruling in *California v. Cabazon Band of Mission Indians* that in light of "traditional notions of Indian sovereignty and the congressional goal of Indian self-government, including its 'overriding goal' of encouraging tribal self-sufficiency and economic development," California lacked authority to regulate gaming on Indian lands absent congressional authorization.[10]  IGRA establishes three classes of gaming: class I gaming, which encompasses "social games solely for prizes of minimal value or traditional forms of Indian gaming," class II gaming, which includes bingo and similar games (including electronic bingo), and class III gaming, which encompasses all other games.[11] Class II gaming, the gaming at issue here, is within the exclusive jurisdiction of the relevant tribe, but must be authorized by the tribe pursuant to a tribal gaming ordinance approved by the NIGC and must be located within a state that permits such gaming for any purpose by any person.[12]  Class II gaming is subject to regulation by the NIGC as well as the tribe.[13] A tribe may authorize gaming on "Indian lands," which includes "any lands . . . held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power."[14]

---

[10] 480 U.S. 202, 216 (1987) (quoting *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 335 (1983)).

[11] 25 U.S.C. § 2703(6), (7) and (8); *see also Maverick*, 123 F.4th at 966.

[12] 25 U.S.C. § 2710(a)(2), (b)(1).

[13] *Id*. § 2710(a)(2).

[14] *Id*. § 2703(4)(B).

Motion to Dismiss Plaintiffs' First Amended Complaint                    Page 4 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

## III.    APPLICABLE STANDARDS

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to raise the defense that the court lacks subject matter jurisdiction over the entire action or specific claims alleged in the action.[15]  Rule 12(b)(1) is "a proper vehicle for invoking [tribal] sovereign immunity from suit."[16]  When tribal sovereign immunity is raised in a 12(b)(1) motion, "'the party asserting subject matter jurisdiction has the burden of proving its existence,' *i.e.* that immunity does not bar the suit."[17]  On a Rule 12(b)(1) motion, "[n]o presumptive truthfulness attaches to [a] plaintiff's allegations," and a "district court may 'hear evidence regarding jurisdiction' and 'resolv[e] factual disputes where necessary.'"[18]  However, a "facial attack" such as the one here—in which "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction"—does not require resolution of factual disputes.[19]

---

[15] *See also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

[16] *Alaska Logistics, LLC v. Newtok Vill. Council*, 357 F. Supp. 3d 916, 923 (D. Alaska 2019) (quoting *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015)).

[17] *Id.* at 923 (quoting *Pistor*, 791 F.3d at 1111).

[18] *Pistor*, 791 F.3d at 1111 (alterations in original) (quoting *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009)); *see also Barron v. Alaska Native Tribal Health Consortium*, 373 F. Supp. 3d 1232, 1236-37 (D. Alaska 2019).

[19] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In deciding the Tribe's motion, the Court may consider documents referenced in the complaint, including the NIGC's July 18, 2024 decision approving the Tribe's Gaming Ordinance, Ex. A, without converting the motion into a "factual" challenge.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (Under Rule 10(c), "[c]ertain written instruments attached to pleadings may be considered part of the pleading.  Even if a document is not attached to a

Relevant here, when a "required party" is dismissed or cannot be joined to an action, dismissal of the entire action is mandated under Rule 12(b)(7) for "failure to join a [required] party under Rule 19." Rule 19 "sets forth a three-step inquiry": (1) whether the absent party is "required"; (2) if so, "whether joinder of that party is feasible"; and (3) if joinder of the absent party is infeasible, "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."[20] To determine whether Rule 19 requires the joinder of additional parties, the court may consider evidence outside the pleadings.[21]

## IV.    ARGUMENT

### A.    The Tribe Has Sovereign Immunity and Must Be Dismissed Under Rule 12(b)(1).

As a federally recognized tribe, like other governments, the Tribe possesses sovereign immunity.[22] In an unconvincing attempt to avoid the Tribe's sovereign

---

complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." (citations omitted)).

[20] *Maverick*, 123 F.4th at 972 (quoting *Klamath Irrigation*, 48 F.4th at 943).

[21] *Cf. Safe Air for Everyone*, 373 F.3d at 1039; *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960); *Behrens v. Donnelly*, 236 F.R.D. 509, 512 (D. Hawaii 2006) (citing Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 3d. § 1359 at 68 (2004)).

[22] *Bay Mills Indian Cmty.*, 572 U.S. at 788 ("Among the core aspects of sovereignty that tribes possess . . . is the 'common-law immunity from suit traditionally enjoyed by sovereign powers.'" (quoting *Santa Clara Pueblo*, 436 U.S. at 58)).

Motion to Dismiss Plaintiffs' First Amended Complaint                    Page 6 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

immunity, Plaintiffs' complaint describes the Tribe as "an unincorporated association that was created in 1988,"[23] and quotes from a superseded Alaska Supreme Court decision to misleadingly argue that "Congress has demonstrated its intent that Alaska Native communities not be accorded sovereign status."[24] The 1988 date of creation cited by Plaintiffs appears to be a reference to the year the Tribe adopted its written Constitution.[25] Plaintiffs continue with a long exposition of their incorrect views on why Eklutna is not a tribe and why the Eklutna allotment is not "Indian Land."[26] Plaintiffs' unfounded arguments regarding the status of tribes in Alaska have previously been raised by their counsel (and others) on multiple occasions and have been unequivocally rejected in federal and state court cases going back decades.[27]

_____

[23] Compl. ¶ 14.

[24] *Id.* ¶ 23 (quoting *Native Vill. of Stevens v. Alaska Mgmt. & Plan.*, 757 P.2d 32, 41 (Alaska 1988)). *But see John v. Baker*, 982 P.2d 738, 749 (Alaska 1999) (superseding *Native Vill. of Stevens* and recognizing that Alaska tribes are sovereigns); *see also, e.g.*, *Douglas Indian Ass'n v. Cent. Council of Tlingit & Haida Indian Tribes of Alaska*, 403 P.3d 1172, 1176 (Alaska 2017) ("We have long held that federally recognized tribes in Alaska are sovereign entities entitled to tribal sovereign immunity in Alaska state court.").

[25] Ex. A, NIGC Letter, at 2 ("The Tribe is a federally recognized Indian Tribe of the Dena'ina people [who] still reside in their traditional homeland in the upper Cook Inlet region of Alaska. The Tribe adopted a constitution in 1988, which was updated in 1996 and amended in 2000.").

[26] Compl. ¶¶ 21-38.

[27] *See*, *e.g.*, *Simmonds v. Parks*, 329 P.3d 995, 1004 (Alaska 2014) ("Parks, represented by Mitchell [Plaintiffs' counsel here], repeated his argument that the Native Village of Minto is not a federally recognized tribe and that the superior court should disregard precedent to the contrary from the U.S. District Court, the Ninth Circuit, and the Alaska Supreme Court."); *John*, 982 P.2d at 750 ("Through the 1993 tribal list and the 1994 Tribe List Act, the federal government has recognized the historical tribal status of Alaska Native villages

Motion to Dismiss Plaintiffs' First Amended Complaint                    Page 7 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

Case 3:24-cv-00273-JLR    Document 13    Filed 02/18/25    Page 7 of 26

The Native Village of Eklutna is not "an unincorporated association"; it is indisputably a federally recognized tribe. This is a matter of established law. In 1994, Congress passed the Federally Recognized Indian Tribe List Act, requiring the Secretary of the Interior to publish annually "a list of all Indian tribes which the Secretary recognizes to be eligible for the special programs and services provided by the United States to Indians because of their status as Indians."[28] As Plaintiffs admit, the Eklutna Native Village has been on every iteration of the Secretary's list—even those published in the early 1980s, before enactment of the List Act.[29] Inclusion on the federal list "[m]eans the tribe is entitled

_____

. . . . In deference to that determination, we also recognize such villages as sovereign entities."). *John v. Baker* has been reaffirmed multiple times. *E.g.*, *Douglas Indian Ass'n*, 403 P.3d at 1176 ("We have long held that federally recognized tribes in Alaska are sovereign entities entitled to tribal sovereign immunity in Alaska state court."); *McCrary v. Ivanof Bay Vill.*, 265 P.3d 337, 342 (Alaska 2011); *State v. Native Vill. of Tanana*, 249 P.3d 734, 750 (Alaska 2011); *In re C.R.H.*, 29 P.3d 849, 851 n.5 (Alaska 2001). The federal courts have uniformly agreed that Alaska Native tribes are federally recognized tribes enjoying the full attributes of sovereignty, including sovereign immunity. *E.g.*, *Ninilchik Traditional Council v. Fleagle*, No. 3:06 CV 213 JWS, 2006 WL 2711522, at *2 (D. Alaska Sept. 20, 2006); *Koniag, Inc. v. Kanam*, No. 3:12-CV-00077-SLG, 2012 WL 2576210, at *4 (D. Alaska July 3, 2012); *Akiachak Native Cmty. v. Salazar*, 935 F. Supp. 2d 195, 211 (D.D.C. 2013) (holding invalid a regulation that treated federally recognized tribes in Alaska differently from federally recognized tribes elsewhere, in violation of the "privileges and immunities" statute, 25 U.S.C. § 5123(g)), *vacated as moot on other grounds*, 827 F.3d 100 (D.C. Cir. 2016); *Douglas Indian Ass'n v. Cent. Council of Tlingit & Haida Indians of Alaska*, No. 1:15-CV-00004-RRB, 2015 WL 4909955, at *1 (D. Alaska Aug. 17, 2015); *see also* Minute Order, *Native Vill. of Eklutna v. United States*, No. 1:19-cv-02388-DLF (D.D.C. Aug. 19, 2020) (denying motion to intervene by Alaska Charitable Gaming Alliance, represented by Plaintiffs' counsel here, which had sought to intervene in order to argue that the Native Village of Eklutna is not a federally recognized tribe).

[28] Pub. L. No. 103-454, § 104, 108 Stat. 4791, 4792 (1994) (codified at 25 U.S.C. § 5131).

[29] 89 Fed. Reg. 944, at 947 (2024 List); *see* Compl. ¶¶ 26-27.

Motion to Dismiss Plaintiffs' First Amended Complaint
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

to the immunities and privileges available to other federally recognized tribes."[30]  All tribes recognized by the Secretary of Interior as reflected on the list have "the same privileges and immunities, including tribal sovereign immunity, that other federally recognized Indian tribes possess."[31]  As the Ninth Circuit has explained, the List Act was enacted precisely "to ensure that Indian tribal entities, once federally recognized and included on the published list of recognized tribes, were not treated differently based on" their method of creation or recognition.[32]  Tribes on the Secretary's list are equally recognized by the State of Alaska, which has enacted legislation recognizing tribes in the state by direct

---

[30] 25 C.F.R. § 83.2(b); *see also U.S. v. Zapeda*, 792 F.3d 1103, 1114 (9th Cir. 2015) ("The BIA has the authority to determine which tribes satisfy the criteria for federal recognition.  It maintains and publishes annually a list of federally recognized tribes." (citations omitted)).  Federal recognition "is a formal political act confirming the tribe's existence as a distinct political society, and institutionalizing the government-to-government relationship between the tribe and the federal government."  Felix Cohen, *Cohen's Handbook of Federal Indian Law* § 3.02[3], at 134-35 (Nell Jessup Newton ed., 2012).

[31] *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 989 (9th Cir. 2020); *see also Ito v. Copper River Native Ass'n*, 547 P.3d 1003, 1010 (Alaska 2024) ("Among the core aspects of sovereignty that tribes possess is the common-law immunity from suit traditionally enjoyed by sovereign powers.  Federally recognized tribes are therefore entitled to tribal sovereign immunity . . . ." (cleaned up)).  This is not a case in which the Tribe was "included on the most recent list *as a result of* the Final Decision now challenged," *see Cherokee Nation v. Babbitt*, 117 F.3d 1489, 1499 (D.C. Cir. 1997) (emphasis added); rather, the Tribe has been recognized for decades by Congress, Interior and the courts.

[32] *Jamul Action Comm.*, 974 F.3d at 993.

Motion to Dismiss Plaintiffs' First Amended Complaint                              Page 9 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

reference to the federal list.[33]  And, once recognized and on the list, a tribe "may not be terminated except by an Act of Congress."[34]

Plaintiffs allege that the 1993 publication of the federal list—which first acknowledged that Tribes in Alaska possess "the same governmental status as other federally acknowledged Indian tribes"—somehow defied Congress's intent and is therefore invalid (despite numerous court decisions to the contrary).[35]  But Congress itself spoke to this very issue and affirmed the inclusion of Alaska Native tribes on the federal list.  In the same public law enacting the Federally Recognized Tribe List Act, Congress also enacted the Tlingit and Haida Status Clarification Act.[36]  That Act specifically explained that "on October 21, 1993, the Secretary of the Interior published a list of federally recognized Indian tribes pursuant to part 83 of title 25 of the Code of Federal

---

[33] Alaska Stat. § 01.15.100 ("The state recognizes all tribes in the state that are federally recognized under 25 U.S.C. 5130 and 5131 [the List Act].").  The Alaska Supreme Court has repeatedly agreed that the tribes on the federal list are sovereign tribes.  *See, e.g.*, *John*, 982 P.2d at 747.

[34] § 103(4), (5), 108 Stat. at 4791–92.  Federal courts defer to Congress and the executive branch in determining whether a particular group is recognized as a tribe.  *See, e.g.*, *Wyandot Nation of Kansas v. United States*, 858 F.3d 1392, 1398 (Fed. Cir. 2017) ("[T]he List Act regulatory scheme exclusively governs federal recognition of Indian tribes."); *Mdewakanton Band of Sioux in Minn. v. Haaland*, 848 F. App'x 439, 440 (D.C. Cir. 2021) ("The List Act grants the Secretary a pivotal role in recognition decisions, calling on her to 'publish in the Federal Register a list of all Indian tribes which *the Secretary recognizes* to be eligible . . . .'" (quoting 25 U.S.C. § 5131(a) (emphasis in original)); *see also Kanam v. Haaland*, No. 21-1690, 2022 WL 2315552, at *1 (D.D.C. 2022) (citing *United States v. Holliday*, 70 U.S. 407, 419 (1865)).

[35] Compl. ¶¶ 30-34, 50-56.

[36] Pub. L. No. 103-454, tit. II, 108 Stat 4791, 4792 (Nov. 2, 1994).

Motion to Dismiss Plaintiffs' First Amended Complaint                    Page 10 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

Regulations."[37]  It then admonished the Secretary for failing to include one specific Alaska tribe on the list (the Central Council of Tlingit and Haida Indian Tribes of Alaska) and clarified that the Central Council of Tlingit and Haida "continues to be a federally recognized Indian tribe."[38]  Congress went on to provide that "[n]othing in [the Tlingit and Haida Status Clarification Act] shall be interpreted to diminish or interfere with *the government-to-government relationship between the United States and other federally recognized Alaska Native tribes*."[39]

In other words, Congress took a granular look at the 1993 list, chose to make just *one* change to the Alaska tribes listed there, and reaffirmed the sovereign status of all federally recognized Alaska tribes.  This action is an express ratification of the 1993 list: "Where 'an agency's statutory construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned.'"[40]  Here, Congress directed the Department to amend the Alaska list in one specific respect but left the remainder of the Alaska list untouched.  Thus,

---

[37] *Id.* tit. II, § 202(2).

[38] *Id.* tit. II, §§ 202(3)-(5), 203.

[39] *Id.* tit. II, § 204(a) (emphasis added).

[40] *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 535 (1982) (quoting *United States v. Rutherford*, 442 U.S. 544, 554 n.10 (1979)) (internal quotation marks omitted).

Motion to Dismiss Plaintiffs' First Amended Complaint          Page 11 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

Congress's nearly immediate ratification of the Department's official list of federally recognized tribes in Alaska, including Eklutna, is conclusive.[41]

For all of these reasons, both federal and state courts have universally, expressly and *repeatedly* recognized that tribes in Alaska—including Eklutna—are federally recognized tribes possessing all the attributes of sovereignty possessed by tribes in the Lower 48 states.[42]

Because Eklutna is a federally recognized tribe, sovereign immunity resolves this case. "Tribal sovereign immunity protects Indian tribes from suit absent express authorization by Congress or clear waiver by the tribe."[43] Accordingly, the courts—including the U.S. Supreme Court—"have time and again treated the doctrine of tribal

---

[41] *Cf. Douglas v. Xerox Bus. Servs., LLC*, 875 F.3d 884, 889 (9th Cir. 2017) (where Congress makes statutory changes yet chooses to leave an agency interpretation in place, "the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress" (quoting *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986))).

[42] *Native Vill. of Eklutna*, 2021 WL 4306110, at *1 ("Eklutna is a federally recognized Indian tribe . . . ."); *M.J. ex rel. Beebe v. United States*, 721 F.3d 1079, 1084 (9th Cir. 2013) (Native Village of Kwinhagak, another Alaska tribe, enjoys "sovereign immunity as an Indian tribe"); *John*, 982 P.2d at 747 ("[F]or those who may have doubted the power of the Department of the Interior to recognize sovereign political bodies, a 1994 act of Congress appears to lay such doubts to rest. In the Federally Recognized Tribe List Act of 1994, Congress specifically directed the Department to publish annually 'a list of all Indian tribes which the Secretary recognizes to be eligible for the special programs and services provided by the United States to Indians because of their status as Indians.'" (internal citation omitted)).

[43] *Miller v. Wright*, 705 F.3d 919, 923 (9th Cir. 2013) (quoting *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 725 (9th Cir. 2008)); *see also Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998).

Motion to Dismiss Plaintiffs' First Amended Complaint                    Page 12 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

Case 3:24-cv-00273-JLR    Document 13    Filed 02/18/25    Page 12 of 26

immunity as settled law and dismissed any suit against a tribe absent congressional authorization (or a waiver)."[44]  "This immunity applies to the tribe's commercial as well as governmental activities."[45]  "[T]here 'is a strong presumption against waiver of tribal sovereign immunity,' and any congressional abrogation of tribal sovereign immunity must be unmistakably clear."[46]  Similarly, "a tribe only waives its immunity if it does so expressly."[47]

Plaintiffs do not allege either congressional abrogation or tribal waiver of Eklutna's sovereign immunity, nor could Plaintiffs do so, since neither has occurred.[48]  Thus, under Rule 12(b)(1), dismissal of the Tribe from this action is required.  As a matter of law, the Tribe has sovereign immunity, and there are no allegations of fact in the complaint that would "otherwise invoke federal jurisdiction."[49]

---

[44] *Bay Mills Indian Cmty.*, 572 U.S. at 789 (2014) (cleaned up) (quotation omitted).

[45] *Miller*, 705 F.3d at 923 (quoting *Cook*, 548 F.3d at 725).

[46] *Grondal v. United States*, 37 F.4th 610, 617 (9th Cir. 2022) (internal quotation marks and citation omitted).

[47] *Oertwich v. Traditional Vill. of Togiak*, 29 F.4th 1108, 1117 (9th Cir. 2022), *withdrawn on other grounds*, 41 F.4th 1193 (9th Cir. 2022) (citing *Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 419 (9th Cir. 1989)).

[48] *See* Declaration of Aaron Leggett, President of the Native Village of Eklutna, Ex. B (confirming non-waiver of the Tribe's sovereign immunity).  In any event, it is Plaintiffs' burden to establish this Court's jurisdiction, not the Tribe's burden to prove a lack of jurisdiction.  *See Alaska Logistics*, 357 F. Supp. 3d at 923 (citing *Pistor*, 791 F.3d at 1111).  The fact that Plaintiffs have not alleged waiver is, on its own, sufficient to resolve this motion.

[49] *See Safe Air for Everyone*, 373 F.3d at 1039.

Motion to Dismiss Plaintiffs' First Amended Complaint                    Page 13 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

Case 3:24-cv-00273-JLR    Document 13    Filed 02/18/25    Page 13 of 26

### B. The Case Must Be Dismissed Because the Tribe is an Indispensable Party Under Rule 19.

Dismissal of the Tribe does not end the discussion. This matter cannot in equity and fairness proceed in the Tribe's absence, and thus the entire matter must be dismissed under Rule 19. The Tribe is named as a party defendant, and a party may move to dismiss a complaint for "failure to join a party under Rule 19" when that party has been improperly joined.[50] Similarly, non-parties that have not consented to the court's jurisdiction may specially appear to seek dismissal pursuant to Rule 19.[51]

In considering dismissal under Rules 12(b)(7) and 19, the court follows a "three step inquiry":

> [1] First, we determine whether the absent party is "required" under Rule 19(a). [2] If the absent party is required, we then "determine whether joinder of that party is feasible." [3] If joinder is infeasible, [under Rule 19(b)] we must then "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."[52]

**[1] Eklutna is a required party.** Under Rule 19(a)(1), a party is "required" if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i)   as a practical matter impair or impede the person's ability to protect the interest; or

---

[50] Fed. R. Civ. P. 12(b)(7); *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456 (9th Cir. 1994).

[51] *See Maverick*, 123 F.4th at 978; *Friends of Amador County v. Salazar*, 554 F. App'x 562, 564 (9th Cir. 2014); *Milligan v. Anderson*, 522 F.2d 1202, 1203-04 (10th Cir. 1975).

[52] *Maverick*, 123 F.4th 971-72 (quoting *Klamath Irrigation*, 48 F.4th at 943).

Motion to Dismiss Plaintiffs' First Amended Complaint                    Page 14 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.[53]

Thus, under Rule 19(a) there are "two broad categories of required parties."[54]  Under subparagraph (a)(1)(B)(i) (the category applicable here), a party is "required" if the party has an interest in the action and is so situated that "disposing of the action in [their] absence" may "as a practical matter impair or impede the person's ability to protect the interest."[55]  Such a situation can arise even in an Administrative Procedure Act proceeding against a federal official:

> Although an absent party has no legally protected interest at stake in a suit seeking only to enforce compliance with administrative procedures, our case law makes clear that an absent party may have a legally protected interest at stake in procedural claims where the effect of a plaintiff's successful suit would be to impair a right already granted.[56]

That is precisely the case here.  Under Rule 19(a)(1)(B), there can be no reasonable dispute that Plaintiffs' lawsuit directly, substantially, and intentionally "implicates the Tribe's legally protected economic and sovereign interests."[57]  It concerns the Tribe's Gaming Ordinance, its lease, and its gaming activities under that Gaming Ordinance and

---

[53] Fed. R. Civ. P. 19(a)(1).

[54] *Ward v. Apple Inc*., 791 F.3d 1041, 1048 (9th Cir. 2015), *abrogated on other grounds by Sperring v. LLR, Inc*., 995 F.3d 680, 682 (9th Cir. 2021).

[55] *See Klamath Irrigation*, 48 F.4th at 943 (quoting Fed. R. Civ. P. 19(a)(1)(B)) (alteration in original).

[56] *Id.* (quoting *Diné Citizens*, 932 F.3d at 852).

[57] *Maverick*, 123 F.4th at 972.

Motion to Dismiss Plaintiffs' First Amended Complaint                    Page 15 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

lease. The NIGC approved the Tribe's Gaming Ordinance, and the BIA approved the Tribe's lease of the Eklutna allotment, in part on the basis of the NIGC's approval.[58] The Tribe has constructed and is operating a small gaming facility on the allotment pursuant to those approvals.

Courts have consistently found that similar approvals give rise to a legally protectible interest. As with the corporation wholly owned by the Navajo Nation in *Diné Citizens*, Eklutna has an "interest in the existing lease" and the related approvals because "[w]ithout the proper approvals, the [project] could not operate, and the [Tribe] would lose a key source of revenue."[59] And as with the Shoalwater Bay Tribe's interests in *Maverick*, Eklutna has "a legitimate interest in the legality" of its Gaming Ordinance and gaming on the Eklutna allotment.[60]

---

[58] *See* Letter from Bryan Newland, Assistant Sec'y for Indian Affs., Dep't of Interior, to Aaron Leggett, President, Native Vill. of Eklutna (Jan. 16, 2025), *available at* https://www.bia.gov/sites/default/files/media_document/2025.01.16_eklutna_decision_letter_508_compliant.pdf. Under Federal Rule of Evidence 201(b), a court can take judicial notice of facts "from sources whose accuracy cannot reasonably be questioned." This includes documents that have been "made publicly available by government entities" like this lease approval letter here. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

[59] *See Diné Citizens*, 932 F.3d at 853; *see also Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002) (Navajo Nation had protectible interest in lease of Indian land to defendant, which involved the "Nation's ability to secure employment opportunities and income for the reservation").

[60] *Maverick*, 123 F.4th at 972; *see* 25 U.S.C. § 2710 ("Tribal gaming ordinances").

Motion to Dismiss Plaintiffs' First Amended Complaint                Page 16 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

The Tribe's economic interests are also concrete. The Tribe entered contracts and is conducting operations on the Eklutna allotment. Plaintiffs themselves allege that the Tribe has entered a "$30 million" contract to "construct a 58,000 square foot casino on the [Eklutna] allotment," and that the Tribe has begun "clearing the [Eklutna] allotment of timber in order to begin construction of the casino."[61] The details aside (which the Tribe does not concede), Plaintiffs acknowledge that their action is *intended* to directly interfere with the Tribe's contractual obligations and stop its on-going business operations on the Eklutna allotment (and in doing so, cut off the Tribal employment and tribal revenues associated with those operations). The Tribe therefore has an indisputable economic interest in the continued operation of the gaming facility and performance of its contracts.[62]

The Tribe also has statutorily recognized "legitimate interests" in developing the Eklutna allotment for economic self-sufficiency and in the revenue the gaming operation will generate for the Tribe, which supports tribal government.[63] The Tribe similarly has a

---

[61] Compl. ¶¶ 42, 49.

[62] *See Dawavendewa*, 276 F.3d at 1156 ("[N]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." (quoting *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975))).

[63] The U.S. Supreme Court and Congress have recognized tribal sovereignty interests in gaming. *See Cabazon Band of Mission Indians*, 480 U.S. at 217; 25 U.S.C. § 2702 ("The purpose of this chapter is—(1) to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments"); *see also Maverick*, 123 F.4th at 966 ("While drafting [IGRA], the Select Committee on Indian Affairs acknowledged the importance of gaming to tribal sovereignty, explaining that the income from gaming has enabled tribes 'to provide a wider range of government services to tribal citizens and reservation residents than would

Motion to Dismiss Plaintiffs' First Amended Complaint                Page 17 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

Case 3:24-cv-00273-JLR    Document 13    Filed 02/18/25    Page 17 of 26

sovereignty interest in continued recognition of its authority to govern the Eklutna allotment.[64] These interests, too, support a finding that Rule 19(a)(1)(B) applies.

For much the same reason, it is self-evident that if Plaintiffs "succeed[] in their challenge and the agency action[ is] vacated," the Tribe's interests "would be impaired" under subparagraph (a)(1)(B)(i).[65] Indeed, Plaintiffs' stated goal is to reverse the approvals granted to the Tribe and halt the Tribe's gaming operation. Accordingly, disposing of this action in the Tribe's absence (due to its sovereign immunity from suit) would "as a practical matter impair or impede the [Tribe's] ability to protect [its] interest[s]."[66] In sum, this action directly implicates the Tribe's economic interests, its governmental interests in defending and implementing the Gaming Ordinance, and its strong legal rights to sovereignty and self-governance.[67]

---

otherwise have been possible' and often spells 'the difference between an adequate governmental program and a skeletal program that is totally dependent on Federal funding.'" (quoting S. Rep. No. 100-446, at 2-3 (1988))).

[64] *Quileute Indian Tribe*, 18 F.3d at 1460 (loss of "property interests and governing authority over those interests" are protectible interests for Rule 19 purposes).

[65] *Diné Citizens*, 932 F.3d at 853.

[66] *Klamath Irrigation*, 48 F.4th at 943 (quoting Fed. R. Civ. P. 19(a)(1)(B)(i)).

[67] In accord with Congress' stated policy "to promote tribal economic development, tribal self-sufficiency, and strong tribal government," 25 U.S.C. § 2701(4), IGRA requires that tribal gaming revenues be used only to fund tribal government operations and programs, provide for the general welfare of the tribe, promote tribal economic development, and for charitable and local governmental purposes, *id*. § 2710(b)(2)(B).

Motion to Dismiss Plaintiffs' First Amended Complaint                    Page 18 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

As part of the Rule 19(a) "required party" impairment analysis, courts acknowledge that "[a]s a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit."[68] In determining whether the absent party would be adequately represented, courts often consider "whether the interests of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments; whether the party is capable of and willing to make such arguments; and whether the absent party would offer any necessary element to the proceedings that the present parties would neglect."[69]

Here, the United States[70] cannot adequately represent the Tribe's interests. The *Diné Citizens* line of cases is controlling as to this issue. In *Diné Citizens*, the Ninth Circuit held that the United States was unable to adequately represent an absent tribal corporation wholly owned by the Navajo Nation, where the federal government's obligations to follow relevant laws was distinct from the tribal interests in maintaining the mining approvals that had been granted by the government.[71] The court reasoned that while federal defendants "have an interest in defending their own analyses," they "do not share an interest in the

---

[68] *Maverick*, 123 F.4th at 973 (quoting *Alto v. Black*, 738 F.3d 1111, 1127 (9th Cir. 2013)).

[69] *Diné Citizens*, 932 F.3d at 852 (quoting *Alto*, 738 F.3d at 1127-28).

[70] The Acting Chair of the National Indian Gaming Commission, sued in her official capacity, is the only other defendant in this action. "An action against an officer, operating in his or her official capacity as a United States agent, operates as a claim against the United States." *Ministerio Roca Solida v. McKelvey*, 820 F.3d 1090, 1095 (9th Cir. 2016) (citing *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001)).

[71] *Diné Citizens*, 932 F.3d at 853.

Motion to Dismiss Plaintiffs' First Amended Complaint                    Page 19 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

Case 3:24-cv-00273-JLR    Document 13    Filed 02/18/25    Page 19 of 26

*outcome* of the approvals—the continued operation of" the Nation's mine and associated powerplant.[72] The Ninth Circuit applied the same reasoning and reached the same result in its recent *Maverick* decision. There, the court noted that the absent tribe and the federal government "share[d] an interest in the ultimate outcome of this case for very different reasons."[73] It went on:

> [T]hough the federal government maintains an interest in defending its own analysis that formed the basis of its decision to approve the sports-betting compact amendments, it does not share an interest in the *outcome* of the continued approval of the sports-betting compact amendments—the continued operation of sports-betting at tribal casinos. In contrast, the Tribe is interested in defending the approval of the compacts and compact amendments to ensure the continued operation of sports betting and other class III gaming on its land. Whereas the Federal Defendants' interests in this litigation begin and end with defending the compacts, for the Tribe, the stakes of this litigation extend beyond the fate of the compact and implicate sovereign interests in self-governance.[74]

The *Maverick* court ultimately concluded that "[b]ecause the federal government's interest in this litigation is meaningfully distinct from the Tribe's, the Federal Defendants cannot serve as an adequate representative of the Tribe."[75] So too here.

---

[72] *Id.* at 855; *see also Klamath Irrigation*, 48 F.4th at 945; *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984 (9th Cir. 2020) (applying *Diné Citizens*); *Pit River*, 30 F.3d at 1101 ("We have held that the United States cannot adequately represent an absent tribe, when it may face competing interests.").

[73] *Maverick*, 123 F.4th at 974 (quotations omitted).

[74] *Id.* at 974-75 (quotations omitted).

[75] *Id.* at 975.

Moreover, although the United States and Eklutna's interests are currently aligned in defending the NIGC's decision, it is far from clear that their interests will *remain* aligned. Different federal administrations have taken different positions on the legal questions underlying the NIGC's approval here; indeed, in a prior Administration the Department of the Interior litigated *against* the Tribe on the question whether the subject parcel is eligible for gaming under IGRA.[76] And the State of Alaska has specifically urged the Administration to reverse a Solicitor's Opinion upon which NIGC's approval partially relied.[77] The Tribe therefore cannot rely on the federal government to "undoubtedly make all of the [Tribe's] arguments."[78]

In sum, a declaration overturning the NIGC's approval of the Tribe's Gaming Ordinance would undermine the Tribe's sovereign interests and its "very ability to govern itself, sustain itself financially, and make decisions about its own" gaming operation.[79] The Tribe is a "required party" to this action within the meaning of Rule 19.

**[2]    It is Not "Feasible" to Join Eklutna.** The second Rule 19 step is "to determine if joinder [of the required party] is infeasible" under Rule 19(b).[80] Due to the

---

[76] *See Native Vill. of Eklutna*, 2021 WL 4306110.

[77] State of Alaska, Alaska Priorities for Federal Transition 12-13 (Dec. 2024), https://gov.alaska.gov/wp-content/uploads/Alaska-Federal-Transition-Plan.pdf.

[78]  *See Diné Citizens*, 932 F.3d at 852; *Klamath Irrigation*, 48 F.4th at 945.

[79] *Diné Citizens*, 932 F.3d at 856.

[80] *Maverick*, 123 F.4th at 971-72.

Motion to Dismiss Plaintiffs' First Amended Complaint                 Page 21 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

Tribe's sovereign immunity, it cannot be kept in this action absent its consent, which the Tribe has not given, and thus it is not "feasible" to join the Tribe in this action.[81]

**[3]** **In "Equity and Good Conscience," this Action Should be Dismissed.** The third Rule 19 step requires the Court to balance the equitable factors under Rule 19(b). Since it is infeasible to join the Tribe, the Court must determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."[82] There are four factors generally applicable to the Rule 19(b) analysis that courts weigh: "(1) the prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum."[83]

This weighing "almost always favors dismissal when a tribe cannot be joined due to tribal sovereign immunity."[84] Although the Rule 19(b) factors still must be considered, the court's discretion "in balancing the equities . . . is to a great degree circumscribed, and the scale is already heavily tipped in favor of dismissal."[85] As the Tenth Circuit held in

---

[81] *See supra* Section IV.A.

[82] Fed. R. Civ. P. 19(b).

[83] *Dawavendewa*, 276 F.3d at 1161.

[84] *Jamul Action Comm.*, 974 F.3d at 998.

[85] *Northern Arapahoe Tribe v. Harnsberger*, 660 F. Supp. 2d 1264, 1280 (D. Wyo. 2009); *see also Comenout v. Whitener*, No. C15-5054 BHS, 2015 WL 917631, at *4 (W.D. Wash. Mar. 3, 2015); *Quileute Indian Tribe*, 18 F.3d at 1460 ("Plaintiff's interest in litigating a claim may be outweighed by a tribe's interest in maintaining its sovereign immunity."

Motion to Dismiss Plaintiffs' First Amended Complaint                     Page 22 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

*Enterprise Management*, "[w]hen, as here, a necessary party under Rule 19(a) is immune from suit, there is very little room for balancing of other factors set out in Rule 19(b), because immunity may be viewed as one of those interests compelling by themselves."[86]

Indeed, "there is a 'wall of circuit authority' in favor of dismissing actions in which a necessary party cannot be joined due to tribal sovereign immunity."[87] "If the absent parties are Indian tribes invested with sovereign immunity," as the Ninth Circuit has observed, "virtually all the cases to consider the question appear to dismiss under Rule 19, regardless of whether [an alternate] remedy is available."[88] Federal courts acknowledge that Plaintiffs may be left with no adequate remedy upon dismissal for non-joinder, "[b]ut this result is a common consequence of sovereign immunity, and the [T]ribe's interest in maintaining [its] sovereign immunity outweighs the plaintiffs' interest in litigating their claims."[89]

The Tribe's sovereign immunity is therefore dispositive of this issue. Moreover, even if immunity were not dispositive, each of the four factors identified in *Dawavendewa*

---

(quoting *Confederated Tribes of Chehalis Indian Rsrv. v. Lujan*, 928 F.2d 1496, 1500 (9th Cir. 1991))).

[86] *Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989) (quotations omitted).

[87] *Diné Citizens*, 932 F.3d at 857 (quoting *White v. Univ. of Cal.*, 765 F.3d 1010, 1028 (9th Cir. 2014)).

[88] *Id.*

[89] *Am. Greyhound Racing*, 305 F.3d at 1025 (citations omitted); *see also White*, 765 F.3d at 1028; *Friends of Amador County*, 554 F. App'x at 566.

Motion to Dismiss Plaintiffs' First Amended Complaint                    Page 23 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

weigh in favor of dismissal: (1) the Tribe would be gravely prejudiced if the suit proceeds without it;[90] (2) relief cannot be shaped to lessen the prejudice, since Plaintiffs' stated goal is to invalidate the Tribe's Gaming Ordinance and shut down its facility; (3) no adequate remedy can be awarded without the Tribe and without impairing its legally protected interests;[91] and (4) while there is no alternate forum, "this result is a common consequence of sovereign immunity."[92]

## V.    CONCLUSION

For the foregoing reasons, the Native Village of Eklutna respectfully requests that the Court dismiss it from this action pursuant to Civil Rule 12(b)(1) and furthermore dismiss the action in its entirety pursuant to Rules 12(b)(7) and 19.

---

[90] "The first Rule 19(b) factor, which considers 'the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties,' Fed. R. Civ. P. 19(b)(1), 'largely duplicates the consideration that made a party necessary under Rule 19(a).'" *Maverick*, 123 F.4th at 980 (quoting *Am. Greyhound Racing*, 305 F.3d at 1025).

[91] *Am. Greyhound Racing*, 305 F.3d at 1025; *Dawavendewa*, 276 F.3d at 1162; *Dewberry v. Kulongoski*, 406 F. Supp. 2d 1136, 1148 (D. Or. 2005).

[92] *Am. Greyhound Racing*, 305 F.3d at 1025; *see also White*, 765 F.3d at 1028; *Dawavendewa*, 276 F.3d at 1161-62. The public rights exception is inapplicable here because Plaintiffs are advancing their own personal interests in avoiding impacts of the gaming facility on their residences, not a public right, and the requested relief would "destroy the legal entitlements of the absent parties." *Maverick*, 123 F.3d at 982 (quoting *Kescoli v. Babbitt*, 101 F.3d 1304, 1311 (9th Cir. 1996)).

Motion to Dismiss Plaintiffs' First Amended Complaint          Page 24 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

DATED this 18th day of February, 2025 at Anchorage, Alaska.

SONOSKY, CHAMBERS, SACHSE
MILLER & MONKMAN, LLP

By: _/s/ Whitney A. Leonard_
Whitney A. Leonard
Alaska Bar No. 1711064
Richard D. Monkman
Alaska Bar No. 8011101
Chloe E. Cotton
Alaska Bar No. 2011103

Motion to Dismiss Plaintiffs' First Amended Complaint          Page 25 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

Case 3:24-cv-00273-JLR     Document 13     Filed 02/18/25     Page 25 of 26

**Certificate of Service**

The undersigned certifies that on the 18th day of February, 2025, a copy of the foregoing document was served via ECF on:

Donald Craig Mitchell
dcraigm@aol.com

and via U.S. Mail on:

Kathryn R. Vogel, Acting U.S. Attorney for the District of Alaska
c/o Civil Process Clerk
222 West 7th Avenue, Room 253, #9
Anchorage, Alaska 99513

Pamela J. Bondi, Attorney General
950 Pennsylvania Avenue NW
Washington, DC 20530

Sharon Avery, NIGC Acting Chairwoman
1849 C Street NW, Mail Stop #1621
Washington, DC 20240

*/s/ Whitney A. Leonard*
Whitney A. Leonard

Motion to Dismiss Plaintiffs' First Amended Complaint            Page 26 of 26
*Holl et al. v. Avery et al.*, Case No. 3:24-cv-00273-JLR

Case 3:24-cv-00273-JLR    Document 13    Filed 02/18/25    Page 26 of 26