

July 18, 2024

*VIA EMAIL*

Aaron Leggett, President
Native Village of Eklutna
26339 Eklutna Village Road
Chugiak, AK 99567

        **Re:**    **Native Village of Eklutna 2024 Gaming Ordinance**

Dear President Leggett:

    This letter responds to your request, dated and received on April 22, 2024, for the National Indian Gaming Commission (NIGC) Chair to review and approve the Native Village of Eklutna's (Tribe) Gaming Ordinance. The Gaming Ordinance was approved by the Native Village of Eklutna Traditional Tribal Council on April 19, 2024.

    The Gaming Ordinance is site-specific and authorizes gaming on an allotment issued pursuant to the Alaska Native Allotment Act (Ondola Allotment). After careful review and for the reasons set forth below, I have determined that the Gaming Ordinance complies with the Indian Gaming Regulatory Act (IGRA) and the NIGC regulations and I hereby approve the Gaming Ordinance. In coming to this decision, I considered the Tribe's April 22, 2024 submission which included, among other things, an Indian lands analysis with 43 exhibits. Additionally, I considered the Department of Interior Office of the Solicitor's (SOL) analysis of the Ondola Allotment, dated June 27, 2024. As I agree with the SOL's analysis, as incorporated herein, I hereby adopt its reasoning as the basis of my decision.

MAILING ADRESS: NIGC/DEPARTMENT OF THE INTERIOR    1849 C Street NW, Mail Stop #1621 Washington, DC 20040    Tel: 202.632.7003    Fax: 202.632.7066

REGIONAL OFFICES    Portland, OR; Sacramento, CA; Phoenix, AZ; St. Paul, MN; Tulsa, OK; Oklahoma City, OK; Rapid City, SD
WWW.NIGC.GOV

Letter to President Leggett
Re: Native Village of Eklutna 2024 Gaming Ordinance
July 18, 2024
Page 2 of 10

**Indian Land Opinion:**

**Background**

*Native Village of Eklutna*

The Tribe is a federally recognized Indian Tribe of the Dena'ina people which still reside in their traditional homeland in the upper Cook Inlet region of Alaska.[1] The Tribe adopted a constitution in 1988, which was updated in 1996 and amended in 2000.[2] The constitution asserts territorial jurisdiction over land and waters constituting Indian country, including "all fee and allotment lands within the traditional lands of the Eklutna, notwithstanding the issuance of any patent or unrestricted fee title to such lands."[3] The Tribe also asserts territorial jurisdiction over "all lands withdrawn for selection by Eklutna, Incorporated," under the Alaska Native Claims Settlement Act ("ANCSA").[4]

The Eklutna people had the use and occupancy of their territory well into the twentieth century.[5] In 1927, President Calvin Coolidge set aside by Executive Order a reserve of 1,819 acres for the benefit and education of the Eklutna and other Alaska Natives.[6] In 1936, the Secretary of the Interior withdrew approximately 330,000 acres of land for the purpose of establishing a Native reservation pursuant to the Alaska Indian Reorganization Act.[7] The Ondola Allotment is located within this reservation.[8] The reserve was reduced in 1942 and then again in 1961 when the Department of Interior set aside 1,968 acres to be "reserved under [the] jurisdiction of the Bureau of Indian Affairs for use in connection with administration of Native affairs in the vicinity of Eklutna."[9]

---

[1] 2024 Submission at 2-3; Indian Entities Recognized by and Eligible to Receive Services from the United States Bureau of Indian Affairs, 89 Fed. Reg. 944, 947 (Jan. 08, 2024) (The Federally Recognized Indian Tribe List Act of 1994, 25 U.S.C. §5131, directs the Department of Interior to publish annual lists of tribes eligible for special programs and services because of their Indian tribe status.).
[2] *See* 2024 Submission, Exs. 6 and 7. *See also* Tribal Court Codes of the Native Village of Eklutna Tribe, ch. 6(B) Ex. 17 ("The government of the Native Village of Eklutna shall have jurisdiction of the land and waters constituting Indian Country of the Eklutna Tribe as defined by Federal Law.").
[3] 2024 Submission, Ex. 7, 1996 Constitution, Art. II. See also, 1988 Constitution, Art II, 2024 Submission, Ex. 6.
[4] 2024 Submission, Ex. 7, 1996 Constitution, Art. II.
[5] *See* 2024 Submission at 1-5.
[6] Exec. Order No. 4778 (Dec. 5, 1927), modified by Exec Order No. 6734 (Jun. 8, 1938).
[7] 2024 Submission, Ex. 43, 1936 Secretarial Order (Oct. 19, 1936) ("Authority for the Secretary of the Interior to reserve Alaska lands for the benefit of Indians of Alaska is contained in section 2 of the act of May 1, 1936, [Public Law 74-538, 49 Stat. 1250 (1036)].") *Id.*
[8] *See* Illustrative Map, 2024 Submission (Ex. 43).
[9] Public Land Order 2427, 26 Fed. Reg. 6243 (Jul. 12 ,1961); Public Land Order 2516, 26 Fed. Reg. 9832 (Oct. 19, 1961).

**MAILING ADRESS: NIGC/DEPARTMENT OF THE INTERIOR** 1849 C Street NW, Mail Stop #1621 Washington, DC 20040 Tel: 202.632.7003 Fax: 202.632.7066

**REGIONAL OFFICES** Portland, OR; Sacramento, CA; Phoenix, AZ; St. Paul, MN; Tulsa, OK; Oklahoma City, OK; Rapid City, SD
WWW.NIGC.GOV

Case 3:24-cv-00273-JLR   Document 13-1   Filed 02/18/25   Page 2 of 10

Letter to President Leggett
Re: Native Village of Eklutna 2024 Gaming Ordinance
July 18, 2024
Page 3 of 10

In 1951, tribal members sought to protect their traditional lands by filing a claim with the Indian Claims Commission seeking to establish aboriginal title.[10] After Alaska became a State in 1959, the Tribe filed protests with the Bureau of Land Management seeking to establish aboriginal title to hundreds of thousands of acres of land around the Village, including the area where the Ondola Allotment is located.[11] In 1971, Congress enacted ANSCA resolving the Tribe's land claims. Congress recognized Eklutna's status as a Native village and included it on the list of villages eligible to receive land selections as part of the settlement of aboriginal title claims.[12]

*The Ondola Allotment*

In 1963, the Bureau of Land Management issued the Ondola Allotment to Olga Ondola, an Alaska Native, pursuant to the Alaska Native Allotment Act ("ANAA")[13] based on an application filed in 1961.[14] The ANAA expressly provided that "lands so allotted [under the Act] shall be deemed the homestead of the allottee and his heirs in perpetuity, and shall be inalienable and nontaxable until otherwise provided by Congress."[15] The deed conveying the Ondola Allotment contains this same restriction.[16] Ms. Ondola resided on the Allotment until her death in 1964.[17] The parcel has been owned by her heirs and successors since then. The Allotment's current owners are all Tribal members.[18] The Ondola Allotment is located approximately five miles from the Native Village of Eklutna in Chugiak, Alaska.[19]

The Ondola Allotment is more particularly described as: "the allotment owned by the Ondola family located at Lots 64, 66 and 67, located within Section 5, T15N, R1W, Seward Meridian Alaska, containing approximately 8.05 acres, more or less and subject to a restriction on alienation pursuant to the Alaska Native Allotment Act."[20]

*Indian Gaming Regulatory Act*

---

[10] The Natives of Palmer, Alaska, Docket No. 370, Petition, (Aug. 13, 1951).
[11] *See* Field Commission Report at 499-501, 2024 Submission, Exhibit 3.
[12] *See* 43 U.S.C. § 1610(b).
[13] Pub. L. No. 59-171, ch. 2469, 34 Stat. 197 (1906), as amended, Pub. L. 84-931, ch. 891, 70 Stat. 954 (Aug. 2, 1956) (34 Stat. 197).
[14] 2024 Submission, Ex. 10.
[15] 34 Stat. 197.
[16] *See* Native Allotment Deed (Nov. 13, 1963) 2024 Submission (Ex. 10).
[17] 2024 Submission, Ex. 13, ¶ 4.
[18] 2024 Submission at 11, Decl. of Sharron Munson ¶¶ 3–4 (Ex. 42).
[19] 2024 Submission, Maps Showing Location of Allotment (Ex. 12). The driving distance is 7 miles. 2024 Submission at 7, n. 8.
[20] Native Village of Eklutna 2024 Gaming Ordinance at Section 222 (April 19, 2024).

**MAILING ADRESS:** NIGC/DEPARTMENT OF THE INTERIOR   1849 C Street NW, Mail Stop #1621 Washington, DC 20040   Tel: 202.632.7003   Fax: 202.632.7066

**REGIONAL OFFICES**   Portland, OR; Sacramento, CA; Phoenix, AZ; St. Paul, MN; Tulsa, OK; Oklahoma City, OK; Rapid City, SD
WWW.NIGC.GOV

Case 3:24-cv-00273-JLR   Document 13-1   Filed 02/18/25   Page 3 of 10

Letter to President Leggett
Re: Native Village of Eklutna 2024 Gaming Ordinance
July 18, 2024
Page 4 of 10

The Native Village of Eklutna is an "Indian tribe" within the meaning of the IGRA. It has been continuously included on lists of "Alaska Native entities recognized and eligible to receive services" published by the Department of Interior, beginning with the first such list published in 1982,[21] and, more recently, on the list published on January 8, 2024.[22]

The IGRA applies to gaming on Indian lands.[23] IGRA defines the term "Indian lands" as:

> (A) all lands within the limits of any Indian reservation; and
>
> (B) *any lands title to which is* either held in trust by the United States for the benefit of any Indian tribe or individual or *held by any* Indian tribe or *individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power*.[24]

To satisfy IGRA's definition of "Indian lands," the Tribe must show that the Ondola Allotment is subject to a restriction against alienation *and* that the Tribe exercises governmental power over it. Before addressing whether the Tribe has met these requirements, it is important to understand how M-37079[25] informs the Department of Interior's analysis of the question of whether the Ondola Allotment constitutes "Indian lands" under the IGRA.

**Opinions of the Solicitor**

*Inherent Power to Issue Final Legal Interpretations*

The SOL explained that the Solicitor is the chief legal officer of the Department of Interior,[26] and is delegated "all of the authority of the Secretary."[27] The Solicitor may issue M-

---

[21] Indian Tribal Entitles Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs, 47 Fed. Reg. 53130, 53134 (Nov. 24, 1982).
[22] Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 89 Fed. Reg. 944, 947 (Jan. 8, 2024).
[23] 25 U.S.C. § 2710(a)(2) ("Any class II gaming on Indian lands shall continue to be within the jurisdiction of the Indian tribes, but shall be subject to the provisions of this chapter").
[24] 25 U.S.C. § 2703(4)(emphasis supplied). The regulations at 25 C.F.R. § 502.12 are consistent with this language.
[25] *Partial Withdrawal of Solicitor's Opinion M-36975, "Governmental Jurisdiction of Alaska Native Villages Over Land and Nonmembers", and Clarification of Tribal Jurisdiction Over Alaska Native Allotments*, Office of Solicitor, Dep't of Interior, Op., M-37079, (Feb. 1, 2024) (Opinion M-37079).
[26] 43 U.S.C. § 1455 ("Hereafter [after June 26, 1946] the legal work of the Department of the Interior shall be performed under the supervision and direction of the Solicitor of the Department of the Interior, who shall be appointed by the President with the advice and consent of the Senate.").
[27] 209 DM § 3.1 (2020).

**MAILING ADRESS:** NIGC/DEPARTMENT OF THE INTERIOR    1849 C Street NW, Mail Stop #1621 Washington, DC 20040    Tel: 202.632.7003    Fax: 202.632.7066

**REGIONAL OFFICES**    Portland, OR; Sacramento, CA; Phoenix, AZ; St. Paul, MN; Tulsa, OK; Oklahoma City, OK; Rapid City, SD
WWW.NIGC.GOV

Opinions that control all aspects of the Department of Interior agency decision-making.[28] The Department of the Interior Manual expressly authorizes the Solicitor to:

> issue final legal interpretations, in the form of M-Opinions ... on all matters within the jurisdiction of the Department, which shall be binding, when signed, on all other Departmental offices and officials and which may be overruled or modified only by the Solicitor, the Deputy Secretary, or the Secretary.[29]

Opinion M-37079 addressed whether, and to what extent, federally recognized Indian tribes in Alaska can assert jurisdiction over Alaska Native allotments.[30] It concluded that "Native Allotments are subject to the same legal principles governing allotments in the lower 48 states."[31] Consistent with these principles, "tribes in Alaska are presumed to have jurisdiction over Native allotments, subject only to the two exceptions identified by the Department of Interior for off-reservation allotments: (1) when the Native Allotment is owned by a non-tribal member; or (2) when the Native Allotment is geographically removed from the tribal community."[32] Under Opinion M-37079, Tribal jurisdiction exists unless either exception applies.[33] The term "tribal community" refers to either the area surrounding a Tribe's headquarters or village, or the lands customarily and traditionally used by tribal members for hunting, fishing, gathering, and other subsistence activities.[34]

Opinion M-37079 concerns only the portions of Opinion M-36975[35] addressing the existence or extent of tribal jurisdiction over Native Allotments and withdrew those portions because they are "unpersuasive on the merits and cannot be reconciled with subsequent case law and administrative developments."[36] Opinion M-36975 is a lengthy opinion – 133 pages – addressing several different issues related to the nature and extent of governmental powers a Native village can exercise after the Alaska Native Claims Settlement Act.[37] Opinion M-37079 reached a contrary conclusion on the issue of tribal jurisdiction over Native Allotments based on subsequent case law and administrative developments.

---

[28] Although the NIGC, as an independent regulatory body, is not bound by the M-Opinions issued by the Solicitor, the NIGC may adopt these opinions.
[29] 209 DM § 3.2A(11).
[30] "Native Allotment[s]" and "ANAA Allotment[s]," refer to allotments issued pursuant to the Alaska Native Allotment Act.
[31] Opinion M-37079 at 2.
[32] Opinion M-37079 at 2-3.
[33] *Id.*
[34] *Id.* at 2, n. 10.
[35] *Governmental Jurisdiction of Alaska Native Villages Over Land and Nonmembers*, Office of Solicitor, Dept of Interior Op., M-36975 (Jan. 11, 1993) (Opinion M-36975). Also known as the Sansonetti Opinion.
[36] *Id.* at 2.
[37] Opinion M-36975 at 1.

**MAILING ADRESS:** NIGC/DEPARTMENT OF THE INTERIOR    1849 C Street NW, Mail Stop #1621 Washington, DC 20040    Tel: 202.632.7003    Fax: 202.632.7066

**REGIONAL OFFICES**    Portland, OR; Sacramento, CA; Phoenix, AZ; St. Paul, MN; Tulsa, OK; Oklahoma City, OK; Rapid City, SD
WWW.NIGC.GOV

Letter to President Leggett
Re: Native Village of Eklutna 2024 Gaming Ordinance
July 18, 2024
Page 6 of 10

*M-37079*

M-37079 explained that Indian Tribes in the lower 48 have long been presumed to have jurisdiction over Indian country, including allotments, based on "foundational principles of law applicable to tribes."[38] It analyzed in detail the plain language of the ANAA and the General Allotment Act (GAA), and rejected the conclusion made in M-36975 that Native Allotments are Indian country, but not subject to territorial jurisdiction finding three errors in the analysis that supported this conclusion,[39] including:

> The interpretation of the ANAA is not based on the statutory text but on a misreading of the ANAA, GAA, and homestead allotment acts.
>
> The analysis relies on the mistaken premise that tribal jurisdiction over off-reservation allotments depends on past or current reservation status.
>
> The analysis cannot be reconciled with subsequent congressional enactments, including the 1994 amendment to the Indian Reorganization Act (IRA) prohibiting the United States from treating tribes differently absent an act of Congress, and the 2022 Violence Against Women Reauthorization Act.[40]

Opinion M-37079 discusses each of the errors with M-36975 in detail and that analysis need not be repeated here.

*Native Village of Eklutna v. Department of the Interior*

Opinion M-37079 also considered the findings of the United States District Court for the District of Columbia in *Native Village of Eklutna v. Department of the Interior*, the Tribe's appeal of the 2018 Decision,[41] which argued, in part, that the Privileges and Immunities Amendment invalidated the legal reasoning in Opinion M-36975.[42] The District Court concluded that Opinion M-36975 "applied the same legal test that determined tribal territorial jurisdiction across the United States," and that "[t]his legal test remains the appropriate legal standard even after the passage of legislation, including the 'privileges-and-immunities' amendment to the

---

[38] Opinion M-37079 at 18.
[39] Opinion M-37079 at 5.
[40] *Id*.
[41] *See* Letter from John Tahsuda, Principal Deputy Assistant Secretary – Indian Affairs Exercising the Authority of the Assistant Secretary – Indian Affairs, to Aaron Leggett, Native Village of Eklutna President (June 18, 2018) (disapproving proposed gaming lease for the Ondola Allotment. The decision resulted from an analysis controlled by Opinion M-36975 and determination that the Ondola Allotment does not constitute "Indian lands" and is, therefore, ineligible for gaming under IGRA).
[42] *Native Village of Eklutna v. U.S. Dep't of the Interior*, No. 19-cv-2388, 2021 LEXIS 180474, at *22 (D.D.C. Sept. 22, 2021).

**MAILING ADRESS: NIGC/DEPARTMENT OF THE INTERIOR** 1849 C Street NW, Mail Stop #1621 Washington, DC 20040 Tel: 202.632.7003 Fax: 202.632.7066

**REGIONAL OFFICES** Portland, OR; Sacramento, CA; Phoenix, AZ; St. Paul, MN; Tulsa, OK; Oklahoma City, OK; Rapid City, SD
**WWW.NIGC.GOV**

Case 3:24-cv-00273-JLR  Document 13-1  Filed 02/18/25  Page 6 of 10

Letter to President Leggett
Re: Native Village of Eklutna 2024 Gaming Ordinance
July 18, 2024
Page 7 of 10

[IRA]."[43] The District Court concluded that "[n]othing in the Sansonetti Opinion amounts to arbitrary discrimination on behalf of Interior[,]"[44] and that "Interior applied the correct legal standard when making the Ondola Allotment Indian lands determination."[45]

The Solicitor concluded that for the purposes of Opinion M-37079, the District Court "erred in both its reasoning and its ultimate conclusion[,]"[46] and that its decision is not an independent basis for upholding the conclusion on Native Allotments in Opinion M-36975.[47] The Solicitor did not, as suggested by counsel for the State of Alaska in unrelated litigation "'overrule' *Native Village of Eklutna* or at least [] find that he was not bound by it because it was not persuasive enough[.]"[48] Instead, the Solicitor concluded that "the district court simply adopted the Sansonetti Opinion's interpretation and reached its conclusion based on the 'legal test' employed in the Opinion rather than an interpretation of the ANAA."[49] As such, and, because *Native Village of Eklutna v. Department of the Interior* was an Administrative Procedure Act decision where the question before the Court was whether the Department of Interior acted arbitrarily or capriciously with respect to the 2018 Decision, the Solicitor determined that the District Court decision did not require upholding Opinion M-36975's conclusion on Native Allotments.[50] Importantly, the SOL explained that since the issuance of Opinion M-37079, the legal test announced in Opinion M-36975 is no longer the appropriate legal standard for the Department of Interior to apply when evaluating whether an Alaska Indian Tribe has jurisdiction over a Native Allotment.

*Status of the Ondola Allotment*

To satisfy IGRA's definition of "Indian lands," the Tribe must show that the Ondola Allotment is subject to a restriction against alienation and that the Tribe exercises governmental power over it. Congress has defined "Indian country" as including "all Indian allotments, the Indian titles to which have not been extinguished."[51] The Ondola Allotment is "Indian country" within the meaning of 18 U.S.C. § 1151(c).[52] The Ondola Allotment is held in restricted fee by members of the Tribe and the Tribe has thus met the first requirement.

---

[43] *Id.* at *25.
[44] *Id.*
[45] *Id.* at *26.
[46] Opinion M-37079 at 16.
[47] *Id.*
[48] *State of Alaska v. Newland,* et al. Civil Action No.: 3:23-cv-00007-SLG, State of Alaska's Surreply in Further Response to Defendants' and Intervenor Defendants' Cross Motions for Summary Judgment at 10.
[49] Opinion M-37079 at 16.
[50] *Id.*
[51] 18 U.S.C. § 1151(c).
[52] Though the 18 U.S.C. § 1151(c) definition directly applies to criminal jurisdiction, the courts apply it to questions of civil jurisdiction as well. *Alaska v. Native Village of Venetie Tribal Gov't.*, 522 U.S. 520, 527 (1998).

**MAILING ADRESS: NIGC/DEPARTMENT OF THE INTERIOR** 1849 C Street NW, Mail Stop #1621 Washington, DC 20040 Tel: 202.632.7003 Fax: 202.632.7066

**REGIONAL OFFICES** Portland, OR; Sacramento, CA; Phoenix, AZ; St. Paul, MN; Tulsa, OK; Oklahoma City, OK; Rapid City, SD
WWW.NIGC.GOV

Letter to President Leggett
Re: Native Village of Eklutna 2024 Gaming Ordinance
July 18, 2024
Page 8 of 10

The Ondola Allotment is located five miles from the Tribe's headquarters and on lands customarily and traditionally used by tribal members. Accordingly, the presumption in favor of tribal jurisdiction over the Ondola Allotment is met because the Ondola Allotment is owned by tribal members and is not geographically removed from the tribal community.[53] To exercise governmental power over a Native Allotment, the Tribe must first possess jurisdiction. The Tribe has met this criterion.[54] The question of exercising governmental power is a different question than whether the Tribe has jurisdiction.

While there is limited case law on the question of whether a tribe "exercises governmental power" within the meaning of IGRA, federal courts "that have considered the question have held that exercising governmental power requires a showing of both theoretical power to exercise jurisdiction over the property and proof of actual exercise of that authority."[55] In *Massachusetts v. Wampanoag Tribe of Gay Head*, the First Circuit held that "a tribe which had passed ordinances and entered into agreements with state and local governments for the provision of law enforcement and firefighting services exercised governmental power sufficiently within the meaning of IGRA."[56] The NIGC has not promulgated a regulation defining "exercise of governmental power," but rather analyzes this question on a case by case basis, considering all the circumstances.[57]

Here, the Tribe's Constitution provides that the Tribe has territorial jurisdiction over the land and waters constituting Indian country, including "all fee and allotment lands within the traditional lands of the Eklutna, notwithstanding the issuance of any patent or unrestricted fee title to such lands."[58] The Tribe's Court Codes similarly asserts territorial jurisdiction over "the land and waters constituting Indian Country of the Eklutna Tribe as defined by Federal Law."[59] The Tribal Court manages an active case load, including child protection cases and other types of cases that involved the assessment of the Ondola home on the Allotment for child custody placement.[60] The Tribe regulates to protect the environment in its traditional area and has periodically conducted inspections of the Ondola Allotment for compliance purposes.[61]

---

[53] *See* e.g., NIGC, Gaming By the Big Sandy Rancheria on the McCabe Allotment at 2 (Sept. 6, 2006) (recognizing tribal jurisdiction over allotment located 12 miles from the Big Sandy Rancheria); Mem. from Robert T. Anderson, Assoc. Solic., Indian Affs., to Dir., Indian Gaming Mgmt. Staff (Sept. 25, 1996) (recognizing tribal jurisdiction over allotment located 12 miles from the Quinault reservation).

[54] *Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685 at 701-703 (1st Cir. 1994) (IGRA requires a threshold showing by tribe that it possesses jurisdiction over the lands to satisfy the Act's "having jurisdiction" prong).

[55] *Club One Casino, Inc. v. Bernhardt*, 959 F.3d 1142, 1150 (2020).

[56] *Massachusetts v. Wampanoag Tribe of Gay Head*, 853 F.3d 618, 625-26 (1st Cir. 2017).

[57] *National Indian Gaming Commission: Definitions under the Indian Gaming Regulatory Act*, 57 Fed. Reg. 12382, 12388 (1992).

[58] 2024 Submission, Ex. 7, 1996 Constitution, Art. II.

[59] 2024 Submission, Ex. 17, Tribal Court Codes of the Native Village of Eklutna Tribe, ch. 6(B).

[60] 2024 Submission, Ex. 13, Ondola 2007 Aff. ¶ 8; Ex. 11, Alex Aff. ¶ 8(F).

[61] 2024 Submission at 21.

**MAILING ADRESS: NIGC/DEPARTMENT OF THE INTERIOR** 1849 C Street NW, Mail Stop #1621 Washington, DC 20040   Tel: 202.632.7003   Fax: 202.632.7066

**REGIONAL OFFICES** Portland, OR; Sacramento, CA; Phoenix, AZ; St. Paul, MN; Tulsa, OK; Oklahoma City, OK; Rapid City, SD
WWW.NIGC.GOV

Case 3:24-cv-00273-JLR   Document 13-1   Filed 02/18/25   Page 8 of 10

Letter to President Leggett
Re: Native Village of Eklutna 2024 Gaming Ordinance
July 18, 2024
Page 9 of 10

    The Municipality of Anchorage has established government-to-government relations with the Native Village of Eklutna,[62] and, in 1996, the Tribe entered into a Letter Agreement with the Municipality of Anchorage Police Department to "utilize[e] provision of comprehensive service[s] to members of the Tribe of Eklutna." One of the purposes of the Letter Agreement is to "acknowledge mutual commitment to avoid duplication of services."[63]

    The Tribe exercises governmental power in matters related to health care,[64] child protection,[65] social services,[66] sanitation services,[67] natural resources management,[68] road maintenance,[69] and other matters. The Tribe's 2024 Submission includes an extensive discussion of instances that demonstrate the exercise governmental power by the Tribe.[70] These instances constitute "concrete manifestations of governmental authority" over the Ondola Allotment. Therefore, the Tribe exercises governmental power over the Allotment.

**Conclusion**

    Based upon the foregoing analysis, the statutory language of IGRA and NIGC and Department of Interior regulations, the SOL found that the Ondola Allotment as currently held by the members of the Tribe constitutes Indian lands eligible for gaming by the Tribe under IGRA. I agree with this analysis and have adopted the opinion into my approval of the Tribe's Gaming Ordinance.

    Thank you for bringing the Gaming Ordinance to our attention and for providing us with a copy. The Ordinance is approved as it is consistent with IGRA and NIGC regulations. If you have any questions concerning this letter or the ordinance review process, please contact Staff Attorney Danielle Wu at danielle.wu@nigc.gov.

    Sincerely,

    Sharon M. Avery
    Acting Chairwoman

---

[62] 2024 Submission at 22 (Mun. of Anchorage Ordinance No. 2020-137(S) § 1.70.030, Ex. 40).
[63] 2024 Submission at 22 (Native Village of Eklutna and Anchorage Police Dep't (Dec. 10, 1996), Ex. 22).
[64] 2024 Submission at 22.
[65] 2024 Submission at 24.
[66] 2024 Submission at 23.
[67] 2024 Submission at 24.
[68] *Id*.
[69] *Id*.
[70] 2024 Submission at 18-28.

**MAILING ADRESS:** NIGC/DEPARTMENT OF THE INTERIOR    1849 C Street NW, Mail Stop #1621 Washington, DC 20040    Tel: 202.632.7003    Fax: 202.632.7066

**REGIONAL OFFICES**    Portland, OR; Sacramento, CA; Phoenix, AZ; St. Paul, MN; Tulsa, OK; Oklahoma City, OK; Rapid City, SD
WWW.NIGC.GOV

Letter to President Leggett
Re: Native Village of Eklutna 2024 Gaming Ordinance
July 18, 2024
Page 10 of 10

cc: Colin Hampson (champson@sonoskysd.com)
      Whitney Lenard (whitney@sonosky.net)

**MAILING ADRESS: NIGC/DEPARTMENT OF THE INTERIOR** 1849 C Street NW, Mail Stop #1621 Washington, DC 20040 Tel: 202.632.7003 Fax: 202.632.7066

**REGIONAL OFFICES** Portland, OR; Sacramento, CA; Phoenix, AZ; St. Paul, MN; Tulsa, OK; Oklahoma City, OK; Rapid City, SD
**WWW.NIGC.GOV**