UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| BRIAN HOLL, et al.,<br><br>              Plaintiffs,<br><br>    v.<br><br>SHARON AVERY, et al.,<br><br>              Defendants. | CASE NO. 3:24-cv-00273-JLR<br><br>ORDER |

## I. INTRODUCTION

Before the court is a motion to dismiss filed by Defendant the Native Village of Eklutna (the "Tribe"). (MTD (Dkt. # 13); Reply (Dkt. # 33).) Defendant Sharon Avery (the "Government") responds in support of the motion (Gov't Resp. (Dkt. # 29)), and Plaintiffs Brian Holl, Julie Jorlett, John Sarvela, Marilyn Sarvela, Dustin Loughman, and Tiffani Loughman (together, "Plaintiffs") oppose the motion (Pls. Resp. (Dkt. # 26)).[1]

---

[1] The court dismissed Plaintiffs Sean Barnett and Lori Barnett from this action on March 12, 2025. (*See* 3/12/25 Order (Dkt. # 31).)

The court has considered the parties' submissions, the record, and the applicable law. Being fully advised, the court GRANTS the motion.

## II. BACKGROUND

By way of background, the court summarizes the allegations in Plaintiffs' amended complaint. (*See* Am. Compl. (Dkt. # 7).)

Between 1975 and 2017, Plaintiffs became residents of the sparsely populated, heavily timbered, and rural Birchwood Spur Road neighborhood of Anchorage. (*Id.* ¶¶ 6-11.) Plaintiffs rely upon a single road, Birchwood Spur Road, to access their homes. (*Id.* ¶ 11.) This road is located near the Ondola allotment, an approximately eight-acre parcel of land currently leased by the Tribe. (*See id.* ¶¶ 11, 36.)

In October 1993, the Assistant Secretary of the Interior for Indian Affairs included the Tribe in a list of tribes that were recognized by and eligible to receive services from the United States Bureau of Indian Affairs ("BIA"). (*See id.* ¶¶ 30-31); *Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs*, 58 Fed. Reg. 54364 (Oct. 21, 1993) ("1993 List"). The preamble to the 1993 List stated that publication was intended "to eliminate any doubt" that the listed villages and regional tribes, including the Tribe, "are distinctly Native communities and have the same status as tribes in the contiguous 48 states." (Am. Compl. ¶ 31); *see also* 1993 List at 58 Fed. Reg. 54366 ("This list is published to clarify that the villages and regional tribes listed [here] are not simply eligible for services, or recognized as tribes for certain narrow purposes. Rather, they have the same governmental status as other federally acknowledged Indian tribes by virtue of their . . . government-to-government relationship

with the United States; [and] are entitled to the same protection, immunities, [and] privileges as other acknowledged tribes[.]").

In April 2016, the Tribe began leasing the Ondola allotment. (Am. Compl. ¶ 36.) On April 22, 2024, the Tribe submitted a proposed ordinance to Ms. Avery, the Acting Chairwoman of the National Indian Gaming Commission ("NIGC"), that would authorize the Tribe to engage in gaming in a casino that would be located on the Ondola allotment. (*Id.* ¶ 48.) Specifically, the Tribe sought to construct a 58,000 square foot casino containing one thousand gaming machines for bingo and pull-tabs,[2] a restaurant, a bar, and a parking lot for 443 automobiles.[3] (*Id.* ¶ 12.)

On June 27, 2024, the Associate Solicitor of the Department of the Interior for the Division of Indian Affairs, advised by letter that the Ondola allotment is in "Indian country" within the meaning of 18 U.S.C. § 1151(c) and constitutes "Indian lands eligible for gaming by the Tribe[.]" (*Id.* ¶ 48.) On July 18, 2024, Ms. Avery approved the Tribe's proposed gaming ordinance. (*See id.* ¶¶ 1, 13, 48.)

In September 2024, the Tribe began clearing the Ondola allotment to begin constructing the casino. (*Id.* ¶ 49.)

Plaintiffs filed suit on December 16, 2024 (Compl. (Dkt. # 1)), and amended their complaint on December 30, 2024 (Am. Compl.). In their operative complaint, Plaintiffs

---

[2] Accordingly, the types of contemplated gaming at the casino include class I and class II gaming under the Indian Gaming Regulatory Act. (Am. Compl. ¶ 48); *see also* 25 U.S.C. § 2703(6), (7) (defining class I gaming and class II gaming).

[3] Plaintiffs allege that the casino will increase traffic and crime by their homes and decrease the market value of their homes. (Am. Compl. ¶ 12.)

assert, in pertinent part, that: (1) the Tribe's inclusion on a list of federally recognized tribes in the Federal Register was an *ultra vires* agency action that is void *ab initio*; and (2) the Ondola allotment is not "Indian country[,]" and the Tribe cannot exercise governmental power within its bounds. (Am. Compl. ¶¶ 52-53, 56, 58, 61, 63-65.)

Plaintiffs seek, in relevant part, a declaratory judgment that: (1) the Tribe is not a federally recognized tribe; (2) the Tribe is not an "Indian tribe" within the meaning of the Indian Gaming Regulatory Act ("IGRA"); (3) the Ondola allotment is not "Indian country" or "Indian lands" within the meaning of 18 U.S.C. § 1151(c) and the IGRA; and (4) the approval of the Tribe's gaming ordinance on July 18, 2024 was void *ab initio*. (*See id.* at 34-35.)

On February 18, 2025, the Tribe filed a motion to dismiss. (Mot.) The motion is fully briefed and ripe for consideration.

### III. DISCUSSION

The court first discusses the applicable legal standard on a motion to dismiss. The court next discusses the Tribe's arguments that the court should (1) dismiss the Tribe for lack of subject matter jurisdiction under Rule 12(b)(1), and (2) dismiss this action for failure to join the Tribe as an indispensable party under Rules 12(b)(7) and 19.

**A.   Legal Standard**

Federal Rule of Civil Procedure 12(b)(1) allows a party to seek dismissal of an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction is a threshold issue that goes to the court's power to hear a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). The party asserting that

jurisdiction exists bears the burden of proof. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). A defendant may challenge the court's subject matter jurisdiction either factually or facially. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual attack, the challenger presents factual material outside the complaint to show a lack of jurisdiction. *Id*.

In contrast, in a facial attack, such as the one the Tribe makes here (*see* Mot. at 5), a defendant asserts that the allegations on the face of the complaint, even if true, are insufficient to invoke federal jurisdiction. *Id.* The court must accept all factual allegations in the complaint as true and draw all reasonable inferences in Plaintiffs' favor. *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). The court may also consider documents attached to the complaint, documents incorporated into the complaint by reference, and matters properly subject to judicial notice. *Cf. United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**B.    Tribal Sovereign Immunity and Rule 12(b)(1) Dismissal**

"Indian tribes are domestic dependent nations that exercise inherent sovereign authority over their members and territories. Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991) (cleaned up). Tribal sovereign immunity applies to both governmental and commercial activities of a federally recognized tribe, regardless of whether those activities are undertaken on the tribe's lands. *See Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754-55 (1998).

"Federal recognition" of a tribe "may arise from treaty, statute, executive or administrative order, or from a course of dealing with the tribe as a political entity." *See Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 992 (9th Cir. 2020); *see also Agua Caliente Tribe v. Sweeney*, 932 F.3d 1207, 1213 (9th Cir. 2019) ("Federal recognition affords important rights and protections to Indian tribes, including limited sovereign immunity[.]" (quoting *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1273 (9th Cir. 2004))). Accordingly, federal recognition arises from inclusion by the BIA in its lists of tribes that are eligible to receive services. *See Jamul Action Comm.*, 974 F.3d at 992 (discussing recognition by the BIA); *Agua Caliente Tribe*, 932 F.3d at 1214 (same). And, courts in the Ninth Circuit consider tribes included in the BIA's list of eligible tribes to be federally recognized. *See, e.g.*, *M.J. ex rel. Beebe v. United States*, 721 F.3d 1079, 1081 (9th Cir. 2013) (noting that the Native Village of Kwinhagak in Alaska is a "federally recognized tribe" (citing *Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs*, 73 Fed. Reg. 18553, 18557 (April 4, 2008))); *Maverick Gaming LLC v. United States*, 123 F.4th 960, 969 & n.8 (9th Cir. 2024); *Erwine v. Churchill Cnty.*, No. 3:24-cv-00045-MMD-CSD, 2025 WL 822687, at *7 (D. Nev. Mar. 13, 2025).

Plaintiffs concede that, if the Tribe is federally recognized, then it "possesses sovereign immunity and [the] court should grant its motion" to dismiss. (Pls. Resp. at 4-5.) Plaintiffs also acknowledge that the Tribe, since at least 1993, has been included in the BIA's list of recognized tribes that are eligible to receive services from the BIA, and that the BIA intended such inclusion to affirm the sovereign status of the Tribe and the

other listed tribes. (*Id.* at 36-37 (referencing the 1993 List).) Plaintiffs contend, however, that the Tribe is not federally recognized because Congress did not intend to delegate authority to the BIA to recognize tribes and, therefore, the Tribe's inclusion in the BIA's list in 1993 was an *ultra vires* act. (*See id.* at 17-18.)

The court disagrees with Plaintiffs for several reasons. First, when the BIA included the Tribe in the 1993 List and stated that the Tribe, as well as the other listed Alaskan tribes, had "a government-to-government relationship with the United States" such that they were "entitled to the same protection, immunities, [and] privileges as other acknowledged tribes[,]" the BIA acted pursuant to a broad grant of authority from Congress to the executive branch. *See* 1993 List at 58 Fed. Reg. 54363 (citing 25 U.S.C. §§ 2, 9). Specifically, Congress delegated to the BIA's Commissioner of Indian Affairs "the management of all Indian affairs and of all matters arising out of Indian relations[,]" subject to, in pertinent part, the regulations of the President. *See* 25 U.S.C. § 2; *see also* 25 U.S.C. § 9 ("The President may prescribe such regulations as he may think fit for carrying into effect . . . any act relating to Indian affairs, and for the settlement of the accounts of Indian affairs."). Courts have interpreted this grant as authorizing the executive branch to recognize tribes. *See, e.g.*, *Miami Nation of Indians of Indiana, Inc. v. U.S. Dep't of the Interior*, 255 F.3d 342, 345 (7th Cir. 2001) ("Congress has delegated to the executive branch the power of recognition of Indian tribes[.]" (citing 25 U.S.C. §§ 2, 9)); *see generally Eagle Bear, Inc. v. Indep. Bank*, 705 F. Supp. 3d 1141, 1147 (D. Mont. 2023) ("Executive authority over Indian affairs generally flows from the President to the United States Secretary of the Department of Interior. . . . The Secretary [] further

delegates this authority to the BIA, an agency within the Interior Department." (citing 25 U.S.C. §§ 1, 1a, 2; 43 U.S.C. § 1457)).

Second, Congress effectively ratified the 1993 List approximately one year later, indicating its understanding that a tribe's inclusion in the list signified federal recognition.  Specifically, on November 2, 1994, Congress enacted the Federally Recognized Indian Tribe List Act of 1994, which required the Secretary of the Interior to regularly publish in the Federal Register a list of all tribes recognized to be eligible for BIA services.  *See* Pub. L. No. 103-454, Title I, 108 Stat 4791, 4791-92 (Nov. 2, 1994).  In that title, Congress found that tribes could be federally recognized (1) through an act of Congress; (2) administratively, through the procedures set forth in part 83 of title 25 of the Code of Federal Regulations; or (3) judicially, though a decision of a United States court.  *Id*. § 103.

Indeed, in the same public law, Congress also enacted the Tlingit and Haida Status Clarification Act, which reaffirmed that "the Central Council of Tlingit and Haida Indian Tribes of Alaska is a federally recognized Indian tribe."  Pub. L. No. 103-454, Title II, 10 Stat 4791, 4792-93 (Nov. 2, 1994).  In so doing, Congress observed that "on October 21, 1993, the Secretary of the Interior published a list of federally recognized Indian tribes pursuant to part 83 of title 25 of the Code of Federal Regulations[.]"  *Id.* § 202(2).  Congress also (1) found that the 1993 List omitted the Central Council of Tlingit and Haida Indian Tribes of Alaska; (2) reaffirmed that this tribe was "a federally recognized Indian tribe"; and (3) clarified that "[n]othing in this title shall be interpreted to diminish or interfere with the government-to-government relationship between the United States

and other federally recognized Alaska Native tribes[.]" *Id.* §§ 202(2), 203, 204(a). Accordingly, Congress acknowledged not only that tribes can be federally recognized through administrative processes, but also that all of the tribes included in the 1993 List—including the Tribe—were federally recognized.

Third, as explained above, courts have uniformly understood the BIA's lists of tribes eligible to receive services, including the 1993 List, as listing federally recognized tribes for purposes of tribal sovereign immunity. *See, e.g.*, *Maverick Gaming*, 123 F.4th at 969-71 & n.8; *M.J.*, 721 F.3d at 1081; *Erwine*, 2025 WL 822687, at *7.

In sum, the Tribe is federally recognized, meaning that it is entitled to tribal sovereign immunity. Because the Tribe has not waived this immunity (*see* MTD at 2 n.1), the court must dismiss the Tribe from this action, *see Maverick Gaming*, 123 F.4th at 978.

**C.     Failure to Join a Required Party and Dismissal Under Rules 12(b)(7) and 19**

Under Rule 19, in pertinent part, a person subject to service of process whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if that person claims an interest relating to the subject of the action and is so situated that disposing of the action in that person's absence may "as a practical matter impair or impede the person's ability to protect the interest[.]" Fed. R. Civ. P. 19(a)(1)(B)(i). A party may move for dismissal of a complaint under Rule 12(b)(7) for failure to join a party under Rule 19. *See* Fed. R. Civ. P. 12(b)(7); *Maverick Gaming*, 123 F.4th at 971.

Upon a Rule 12(b)(7) motion, the court conducts a three-step inquiry. *Maverick Gaming*, 123 F.4th at 972. First, the court determines whether the absent party is

required under Rule 19(a).  *Id.*  Second, if the absent party is required, the court determines "whether joinder of that party is feasible."  *Id.* (quoting *Klamath Irrigation Dist. v. United States Bureau of Reclamation*, 48 F.4th 934, 943 (9th Cir. 2022)).  Third, if joinder is infeasible, the court must "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  *Id.* (quoting Fed. R. Civ. P. 19(b)).  In conducting this inquiry, the court considers four factors:  (1) "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties"; (2) "the extent to which any prejudice could be lessened or avoided"; (3) "whether a judgment rendered in the person's absence would be adequate"; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."  Fed. R. Civ. P. 19(b).[4]

These factors typically require dismissal where the absent party is a tribe with tribal sovereign immunity.  *See, e.g.*, *Jamul Action Comm.*, 974 F.3d at 998 ("The balancing of equitable factors under Rule 19(b) almost always favors dismissal when a tribe cannot be joined due to tribal sovereign immunity."); *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 857 (9th Cir. 2019) ("[W]e have observed that there is a wall of circuit authority in favor of dismissing actions in which a necessary party cannot be joined due to tribal sovereign immunity—virtually all the cases to consider the question appear to dismiss under Rule 19, regardless of whether an

---

[4] "In order to determine whether Rule 19 requires the joinder of additional parties, the court may consider evidence outside of the pleadings."  *See, e.g.*, *Behrens v. Donnelly*, 236 F.R.D. 509, 512 (D. Haw. 2006).

alternate remedy is available, if the absent parties are Indian tribes invested with sovereign immunity.") (cleaned up).

Plaintiffs argue that the court should not dismiss this action because the Government can adequately represent the Tribe's interests and would make the same arguments as the Tribe in defending agency approval of the Tribe's gaming ordinance. (*See* Pls. Resp. at 40-41.) The Government responds that Ninth Circuit precedent requires the court to dismiss this action because the Tribe is an indispensable party. (*See* Gov't Resp. at 5-6 (citing *Dine Citizens*, 932 F.3d at 855-56).) The Government notes, however, that it disagrees with this precedent and may "assert in future proceedings that the [Government] is generally the only required and indispensable defendant in [] litigation challenging federal agency action."[5] (*Id.* at 6.)

In the circumstances here, the court is bound by Ninth Circuit precedent to dismiss this action. First, joinder of the Tribe is required because "the [Tribe] has a protected interest in . . . its status as a federally recognized tribe." *See Jamul Action Comm.*, 974 F.3d at 997; *see also id.* ("Although [Plaintiffs] couch[] some of [their] claims as challenges to prospective agency decisions—such as the government's approval of the [Tribe's] gaming ordinance—the basis for [Plaintiffs'] claims is [their] contention that the [Tribe] is not a recognized tribe and that its land therefore is not Indian land[.]"). The

---

[5] *See also Maverick Gaming*, 123 F.4th at 984-85 (Miller, J. concurring) (observing that Ninth Circuit precedent generally requires dismissal where a tribe's interests are at stake and the tribe cannot be joined because of tribal sovereign immunity, and acknowledging that there is no exception in Administrative Procedure Act cases challenging final agency action, while arguing that the Ninth Circuit should create such an exception).

Government cannot adequately represent the Tribe's interests because the Government's interests in determining whether a tribe is federally recognized and whether to approve a gaming ordinance differ from the Tribe's interests in preserving federal recognition and its approved gaming ordinance. *Cf. Dine Citizens*, 932 F.3d at 855 (holding that the Government cannot represent the interests of a tribe where the Government does not have an interest in the *outcome* of an approval given to a tribe, even though it does have an interest in defending the analysis that led to the approval).

Second, as the court explained above, joinder is infeasible because the Tribe is entitled to tribal sovereign immunity and has not waived that immunity.

Third, the court concludes that, in equity and good conscience, this action should be dismissed. In this context, a detailed analysis of the factors is not necessary because "[h]aving concluded that the [Tribe] is a party required to be joined if feasible, the remaining steps of the Rule 19 analysis are straightforward." *See Jamul Action Comm.*, 974 F.3d at 988. Specifically, the issues in this action go directly to the Tribe's status as a federally recognized tribe and to the status of lands upon which the Tribe wishes to operate a casino. "Equity and good conscience do not permit an action disputing the [Tribe's] status as a federally recognized tribe and its ownership of land in a suit in which the [Tribe] cannot be joined." *Id.* The court therefore must dismiss this action for failure to join a required party.

//

//

//

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS the Tribe's motion to dismiss (Dkt. # 13) and DISMISSES Plaintiffs' amended complaint, and this action, with prejudice.

Dated this 27th day of June, 2025.

JAMES L. ROBART
United States District Judge